## No. 10,768.

### FULTON INVESTMENT CO., ET AL. *v.* FRASER.

Decided July 7, 1924.   Rehearing Denied November 10, 1924.

Action for damages for assault and battery and false imprisonment.   Judgment for plaintiff.

### *Reversed.*

1. PRINCIPAL AND AGENT—*Authority of Agent.*   The wife of a lessee of land, claiming to be acting as his agent, has no implied authority to prevent the lessor from entering on the land and taking possession of mortgaged property of the lessee as provided in the mortgage.

2. CHATTEL MORTGAGE—*Right of Possession.*   The right to take possession of mortgaged property on condition broken, carries with it the right of entry to take such possession.

3. TRESPASS—*Forcible Entry.*   The breaking of a lock on a farm gate, placed there by an agent without authority, in an attempt to prevent a mortgagee from entering and taking possession or mortgaged property on condition broken, held not to be a trespass.

4. ASSAULT AND BATTERY—*Damages—Plaintiff at Fault.*   In an action for damages for assault and battery, plaintiff held at fault in precipitating the conflict in which she suffered injuries of which complant was made.

5. CHATTEL MORTGAGE—*Title of Mortgagee.*   On condition being broken, the title of the mortgagee, theretofore conditional, becomes absolute and he may take possession of the property without resorting to a replevin action.

6. JUDGMENT—*Damages—No Evidence.*   The submission of a damage case to a jury held erroneous as to defendants as to whom there was no evidence justifying such submission.

7. PRINCIPAL AND AGENT—*Torts of Agent.*   In an action for damages for assault and battery and false imprisonment, a principal held not liable for the tortuous acts of his agent not within the scope of his employment, there being no evidence that the acts were authorized or ratified by the principal.

8. JUDGMENT—*Body Judgment.* Where the record fails to show defendant guilty of malice, fraud or wilful deceit, a body judgment is without foundation.

9. ASSAULT AND BATTERY—*Damages—Burden.* In an action for damages for assault and battery and false imprisonment, against an officer, in defending possession of mortgaged property taken after condition broken, it was incumbent on plaintiff to show that he used more force than necessary.

10. APPEAL AND ERROR—*Joint Judgment.* A joint judgment not supported by evidence as to two of the defendants, reversed.

*Error to the District Court of Jefferson County, Hon. Samuel W. Johnson, Judge.*

Mr. EDWIN H. PARK, for plaintiffs in error.

Messrs. QUAINTANCE & QUAINTANCE, for defendant in error.

*Department One.*

MR. CHIEF JUSTICE TELLER delivered the opinion of the court.

DEFENDANT in error had judgment against plaintiff in error in an action for damages for assault and battery, and for false imprisonment.

The plaintiff's husband was the lessee of a large farm owned by the defendant, The Fulton Investment Company, of which defendant Trogler was the manager. This cause grew out of a controversy between the representatives of the investment company and the plaintiff, over the possession of wheat, on which said company had a chattel mortgage, given by said lessee to secure a balance of the rental for the year 1920. The wheat was in a granary on the leased farm. At the time of the alleged assault the lessee was working in Denver, having, as he testified, left the farm in charge of his wife. The mortgage contained a provision that the mortgaged property should not be removed without the mortgagee's consent, and that it might take possession of the property in case of the mortgagor's de-

fault in the performance of any of his agreements. It is not disputed that the plaintiff had hauled two loads of the wheat to a farm some miles distant. Trogler as the manager of the defendant company employed Townsley to take possession of the wheat for condition broken, giving Townsley a certified copy of the mortgage, as evidence of his authority in the premises. Verdict and judgment were against the defendants, jointly, for $500 actual, and a like sum for exemplary, damages on the assault charge; and for $1,125 actual, and $500 exemplary, damages on the false imprisonment charge. The judgment contained a provision that Trogler and Townsley be confined in the county jail of Jefferson county for one year, or until the judgment was paid.

On December 26, 1920, Trogler took Townsley to the farm to take possession of the wheat. Townsley and plaintiff agree that he then told her that he had been sent there by the mortgagee to see that she hauled away no more wheat, she admitting that she had taken away two loads. She, however, insisted that she could be prevented from removing the wheat only by what she called "replevin papers". Townsley remained at the farm until evening. The next day he went back with a Mr. Brooks, who was engaged to haul the wheat. Plaintiff was shown a certified copy of the mortgage, but she still refused to allow the wheat to be moved, and locked the granary door. Townsley went back to Arvada, and consulted the company's lawyer. He was at that time marshal of Arvada, and had a paper given him by a justice of the peace purporting to appoint him a deputy constable. The next day he went again to the farm, and found the farm gate locked, and the planks removed from two bridges over which it was necessary to drive to reach the granary. He broke the lock, replaced the planks on the bridges, and loaded a truck with wheat. Plaintiff was not at home, but a daughter and a hired man made strong protest against the removal of the wheat, though there was no actual interference with Townsley after he had repaired the bridges.

After the loaded truck had gone, plaintiff returned, went into the house, came out with a BB gun, and advanced upon Townsley with it, driving him backward toward the gate, and finally struck him on the head, staggering him but not felling him. He admits that when he saw plaintiff with the gun he drew his revolver, but says that, when he saw it was a BB gun, he returned the revolver to his pocket. A second hired man, one Dillon, who came with plaintiff, then took part in the melee, and Townsley put handcuffs on him, telling him and plaintiff that they were under arrest for resisting an officer. Plaintiff's hands were tied, and she and Dillon were taken in an automobile to Golden. There the sheriff ordered their release, and when the case against them was called, no one appearing against them, they were discharged.

The plaintiff claims to have been acting as the agent of the lessee, but there is no evidence that he had authorized her to remove the wheat, in violation of his covenant, or to deny to the lessor the rights which, he had given it in the mortgage. Even if she be regarded as a general agent of the lessee, she would have no implied authority to oppose the carrying out of her principal's express agreements.

The plaintiff was, therefore, in no position to deny to the defendant lessor the right of entry upon the premises to do what her principal had agreed it might do. The right to take possession of the wheat on condition broken, carried with it the right of entry to take such possession. Jones on Chattel Mortgages (5th Ed.), § 705.

For this reason the breaking of the lock on the farm gate, put there by the plaintiff without authority from her principal, was no trespass. It has been held, in a very similar case, that even as against the principal, a lessee, it would not be a trespass, a right of entry being implied from the dealings between the parties. By her wholly unauthorized acts plaintiff precipitated a conflict in which she suffered the wrongs of which she complains. There is no evidence of any acts of violence until plaintiff took the law into her own hands, advanced upon defendant Townsley,

and, according to her own testimony, with a gun in her hand, drove him backward toward the gates. He was there in the performance of a duty to his employer, the lessor, which was doing what it had permission from the lessee to do. The basis of the trouble was that plaintiff assumed that the defendant lessor could get possession of the wheat only by an action in replevin. On condition being broken, the title of the mortgagee, theretofore conditional, became absolute (*Hurt v. Hubbard*, 41 Colo. 505, 92 Pac. 908), and, at the time of plaintiff's coming on the scene the mortgagee was in possession of the wheat, as plaintiff in her testimony admitted. She knew about the mortgage, had been shown a certified copy of it by defendant Townsley, but refused to recognize the mortgagee's right under it.

There is evidence tending to show that plaintiff, in insisting upon the mortgagee's resort to law to secure a right which was unquestioned by her principal, was following the advice of her attorney. It is unfortunate, if this be true, because her action, whether upon advice of counsel or otherwise, was the cause of this litigation, as well as a breach of the peace on her part.

The question of the liability of either Trogler, or the Investment Company, for damages should not have been submitted to the jury. There was no evidence to justify such submission. One of plaintiff's daughters testified that she saw Trogler's car in the road some distance from the scene of conflict, but did not see him. The other daughter testified that she saw him, but that he drove away before her mother's return. He testified that he was in Denver at the time the trouble occurred.

The evidence as to Townsley's employment is only to the effect that he was employed to take possession of the wheat under the mortgage, and there is nothing to indicate that Trogler anticipated trouble in his so doing. The locks were put on and the bridges dismantled, because, on the night of the 27th, one of plaintiff's daughters heard Trogler, by telephone, engage a man to haul the wheat. So far

as the record discloses, Trogler knew nothing of these preparations to prevent access to the wheat, nor did he authorize or know of the arrests. Neither the assault nor the arrests were within the scope of Townsley's employment, and Trogler and the company could be held liable only on evidence that Townsley's acts were authorized or ratified. There is no such evidence.

In *Ristine v. Blocker,* 15 Colo. App. 224, 61 Pac. 486, the court laid down the rule above applied, following *Lake Shore Ry. Co. v. Prentice,* 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. We are satisfied with that holding. Neither Trogler nor the company for which he acted having done, or authorized the doing of anything in violation of plaintiff's rights, she had no right to damages against them, either actual or punitive.

Furthermore, there is nothing in the record to show that Trogler was guilty "of malice, fraud, or wilful deceit," and the body judgment was, in any event, without foundation.

It was incumbent upon the plaintiff to show that defendant Townsley in defending his possession of the wheat used more force than was necessary. *Ayres v. Birtch,* 35 Mich. 501. She did not sustain that burden.

The judgment, being joint, and not supported by evidence as to two of the defendants, must be reversed. Since that is so, it will be unnecessary to consider in detail the instructions to which objection is made. A number of them are wholly inapplicable to the case because based upon the theory that the plaintiff acted in defense of her rights, whereas she was in fact meddling with that with which she had no concern. The instructions are further erroneous in that the jury is told that the defendant company should have resorted to a suit in replevin to get the wheat.

The judgment is reversed and remanded, with directions to dismiss as to Trogler and the Fulton Investment Company, and to try only the issue as to the plaintiff's right to

damages from Townsley because of the arrest and detention.

MR. JUSTICE ALLEN and MR. JUSTICE BURKE concur.