CASPER F. RAASCH, Appellant, v. GEORGE O. GOULET, Respondent.

(204 N. W. 338.)

**Vendor and purchaser — vendor permitting purchaser to assign to another, must serve notice of cancellation on assignee.**

1. Where G entered into an executory contract with L for the sale to the latter of certain real property in North Dakota and L is placed in possession under his contract; and, where L, thereafter, while in such possession, and with the knowledge and acquiescence of G, sells the premises to R, R becomes an assignee of L within the purview of §§ 8119–8122, Comp. Laws, 1913, and it is incumbent upon G in the event he desires to cancel the contract with L as against R as assignee to serve notice of cancellation upon R; and service of notice of cancellation upon L, alone, does not cancel or forfeit the rights acquired by R as assignee of L. Williams v. Corey, 21 N. D. 509, followed.

**Trover and conversion — plaintiff must recover on strength of own title.**

2. The plaintiff, in an action for conversion, must recover on the strength of his own title and not on the weakness of that of his adversary.

**Vendor and purchaser — purchaser may recover for hay but not for grain, held in instant case.**

3. In the instant case plaintiff sued for the conversion of certain grain and hay. For reasons stated in the opinion it is held that plaintiff has no title to the grain; but has title to the hay.

Opinion filed May 26, 1925.

Trover and Conversion, 38 Cyc. p. 2048 n. 72. Vendor and Purchaser, 39 Cyc. p. 1387 n. 10; p. 1627 n. 75; p. 1670 n. 74; p. 1677 n. 44; p. 1680 n. 60.

---

Note.—Necessity of recovery on strength of own title, see 26 R. C. L. 1131.

From a judgment of the District Court of Barnes County, *Pugh*, Special Judge, plaintiff appeals.

Reversed in part.

*Lemke & Weaver,* for appellant.

The evidence of the kind of crop the land would ordinarily yield, of the stage of the crop's growth when injured or destroyed, of the average yield per acre of similar land in the neighborhood . . . is competent and maybe weighed by the jury to find the damage to a growing crop at the time of its injury. United States Smelting Co. v. Sisam, 112 C. C. A. 37, 191 Fed. 293, 36 L.R.A.(N.S.) 976.

A farmer is competent to testify as to the value of hay which is grown upon his own land and this even in the absence of proof of a market for the same. McGilvra v. Mpls. St. P. & S. S. M. R. Co. 159 N. W. 854.

Whenever the evidence produced presents an issue of fact which if determined in plaintiff's favor would entitle him to recover, the case should be submitted to the determination of the jury. Where there is some evidence, although slight, the case should be submitted to the jury if there is more than a scintilla of evidence. 36 Cyc. p. 1532, subd. A.

It is a general rule of evidence that where the testimony offered tends in any reasonable degree to establish the probability or improbability of the fact at issue, it should go to the jury. (Minn.) 179 N. W. 644.

The evidence must be viewed in the light most favorable to the party against whom a direction is sought. (Mich.) 190 N. W. 642.

A court is warranted in taking a case from a jury only where there is an entire lack of creditable evidence. Turner v. Lehrman (Wis.) 141 N. W. 1009.

Where there is creditable evidence from which a reasonable inference may be drawn in favor of the contentions of either party the question is for the jury. Guillaume v. Wisconsin-Minnesota Light & P. Co. (Wis.) 155 N. W. 636.

In every case where a legal right has been enfringed, and even if no damages at all are shown, the law will presume damages. Stroup v. Bridger (Iowa) 100 N. W. 113; Douglas v. Hobe, 36 App. Div. 638.

There is no doubt that, for any wrongful invasion of another's property, some damage necessarily results; and the law does not require

any distinct injury to be shown in order to justify a recovery. It considers the infringement of the rights of a party an injury for which damages must be given; because upon no other principle can one's rights be protected. Nicholson v. N. Y. R. Co. 22 Conn. 74; Vogel v. Osborn (Minn.) 126 N. W. 453; 17 C. J. § 65, p. 726; State Bank v. Bismarck E. & I. Co. 31 N. D. 102, 153 N. W. 459; Ray Swallow v. First State Bank, 35 N. D. 608, 161 N. W. 207; Randolph v. United R. Co. (Mich.) 181 N. W. 44.

*Combs & Ritchie,* for respondent.

It is a well settled rule that a judgment of a court of competent jurisdiction on a question directly involved in a suit is conclusive in the second suit between the same parties where the same questions come again in issue although in the second action they relate to different subject matter. Phelps v. Western Realty Co. (Minn.) 94 N. W. 1085; Stevens v. Wagleigh, 57 Pac. 622; 30 Century Dig. ¶ 1242.

If a point or question was in issue and adjudicated in a former suit a party bound by the judgment cannot escape the estoppel by producing at the second trial new argument or additional or different evidence in support of the proposition which was decided adversely to him. Harrington (Cal.) 81 Pac. 546; Breeze v. Haley (Colo.) 18 Pac. 551; 65 N. J. Eq. 479; 78 N. W. 606.

CHRISTIANSON, Ch. J. This is a sequel to Raasch v. Goulet, 49 N. D. 936, 194 N. W. 380, and arises out of the same transaction which was involved in that case. That was an action for moneys had and received, brought to recover moneys which the plaintiff, Raasch, had paid to the defendant, Goulet, for certain seed grain. This is an action in conversion, brought to recover damages for the conversion of fifty tons of hay, and the crops produced from the seed grain involved in the former suit. This case was dismissed by the trial court at the close of plaintiff's case, and plaintiff has appealed from the judgment.

The following statement of facts, contained in Raasch v. Goulet, supra, is also applicable here:

"The plaintiff in 1915 owned land in Nebraska. The defendant, Goulet, owned land in Barnes county, N. D. The Lund Land Company, hereinafter referred to as the Lunds, was a real estate concern having offices at Valley City. In October, 1915, the plaintiff entered

into a preliminary contract with the Lunds whereby he contracted to purchase from them for a stated consideration of $167,700.00 land in North Dakota, aggregating 2,580 acres, then in fact belonging to the defendant, and as a part of the consideration therefor he transferred or agreed to transfer to them his Nebraska land. The defendant had no knowledge of this transaction, neither had he sold the land or listed the same with the Lunds for sale at that time, nor in any manner authorized them to act in the sale for him of the same. Thereafter and in February, 1916, the defendant entered into a contract with the Lunds for the sale of 3,220 acres of land for a stated consideration of $120,765, including that the subject of the Lunds' contract with the plaintiff. The contract for the sale of this land, however, was not turned over to the Lunds by the defendant, but was left in escrow with his attorney. The defendant surrendered possession of the property to the Lunds under this contract. On March 31, 1916, the Lunds entered into a final contract for deed with the plaintiff carrying out the terms of the October contract, and the plaintiff transferred his Nebraska land to them. The Lunds immediately mortgaged the property conveyed to them and appropriated the funds thus obtained. At the time of the consummation of the transaction between the plaintiff and the Lunds, it was arranged that they should procure tenants for the plaintiff for the season of 1916 on the North Dakota land bought by him, and the plaintiff should likewise procure tenants for them for the Nebraska land. This was done. The Lunds, acting for the plaintiff and in accordance with their arrangement with him, placed four tenants on the land he had bought. They advised the plaintiff that it would be necessary for him to procure seed, and that such seed could be had on the premises from the defendant. The plaintiff instructed them to procure the seed. He himself examined some of the seed, and it was satisfactory. The seed was furnished the tenants. The plaintiff paid the defendant therefor. At the time that the seed was purchased, the defendant knew who was buying it and for what purpose, knew that the plaintiff had entered into some arrangement to buy the property from the Lunds, and advised the plaintiff that he (the defendant) had sold it to the Lunds, but did not say that he had given only a contract and not a deed. The defendant also introduced the plaintiff to some of the neighbors as the new owner. The seed was sowed on the land by the tenants

according to plaintiff's directions. Some crop grew therefrom. This was harvested by the tenants. Subsequently the defendant canceled his contract with the Lunds. The plaintiff was not served with any notice of such cancellation. The defendant made claim to certain insurance money paid for damage to buildings on the land, and later dispossessed the tenants of the plaintiff. This was the first notice that the plaintiff had of the defendant's claim to the premises adverse to him. The crop was harvested and threshed, and the defendant took the landlord's share. It does not appear, however, what those crops were or what they were worth. The plaintiff received none of the proceeds. The defendant has at all times since been in possession and use of the land under claim of ownership."

Plaintiff brings this action to recover for the conversion of 50 tons of hay and the landlord's share of the 1916 crop. The questions argued on the appeal relate solely to the merits or demerits of plaintiff's case. It is contended by the plaintiff that there was substantial evidence tending to establish the cause of action alleged in the complaint. The defendant on the other hand contends that there was no such evidence; and that the evidence adduced conclusively established that the alleged cause of action did not exist. After a careful consideration of the record we have reached the conclusion that so far as concerns the alleged conversion of the landlord's share of the 1916 crop, defendant's contention is correct, but that so far as concerns the alleged conversion of hay the plaintiff is correct.

The contract between Goulet and the Land Company is not in evidence. The plaintiff sought to establish it by secondary evidence which was excluded upon the objection of the defendant. The undisputed evidence, however, shows that this contract was made in February 1916 and that by virtue thereof the Lund Land Company was put in possession of the premises and was in such possession at the time it made the contract with the plaintiff. The contract between the plaintiff and the Lund Land Company is in evidence; and by the terms thereof the plaintiff was entitled to possession of the premises. And, as indicated, the evidence shows that tenants were put in possession of the premises; that plaintiff purchased seed for these tenants to be, and which was, used in seeding the land. The undisputed evidence, also, shows that the defendant knew that plaintiff had purchased the premises from the

Lund Land Company; and that defendant knew that the seed grain which he sold to the plaintiff was intended for use in seeding the same. In fact, defendant admitted this upon the trial; and defendant further testified that after plaintiff had made purchase contract with the Lund Land Company he accompanied plaintiff to the premises. The evidence does not disclose when the contract between defendant and the Lund Land Company was cancelled; but the undisputed evidence is to the effect that no notice of cancellation was served upon the plaintiff. In the circumstances disclosed by the evidence it was incumbent upon the defendant to serve notice of cancellation upon the plaintiff if he desired to terminate the rights plaintiff had acquired as a vendee from the Lund Land Company. Williams v. Corey, 21 N. D. 529, 131 N. W. 457, Ann. Cas. 1913B, 731. Inasmuch as such notice was not served the contract between the defendant, Goulet, and the Lund Land Company was not cancelled so far as concerns the rights of the plaintiff as an assignee or vendee of the Land Company. Ibid.; 39 Cyc. pp. 1670, 1680. Hence, at the time the 1916 crop was harvested and threshed the situation was this: the defendant, Goulet, had not terminated the rights of the plaintiff, Raasch, as an assignee or vendee of the Lund Land Company. His (Raasch's) rights were unaffected by the cancellation notice served upon the Lund Land Company; and he was entitled to perform that contract, as assignee of the Lund Land Company so as to protect the rights he had acquired by virtue of the purchase contract he held from the Lund Land Company. Williams v. Corey, supra; 39 Cyc. pp. 1670, 1680. See also 6 Pom. Eq. Jur. §§ 2273 et seq. But the rights of Raasch arose and existed by virtue of the contract between him and the Lund Land Company. And by the terms of that contract there was due from Raasch to the Lund Land Company upon the purchase price of the land, a balance of $78,100.00, with interest at the rate of six per cent per annum, payable annually, from March 1, 1916. And the contract provided that such sum should be paid in the following manner: that Raasch should deliver to the Lund Land Company "one-half of all the grain to be sown or grown on said premises in each and every year during the continuance of the contract beginning with the crop for the year 1916." The contract, further provided "that until the delivery of one-half of the grain as aforesaid during each and every year of this contract the legal title to,

and ownership of, all of said grain raised during each and every year shall be and remain in the Lund Land Co."

The undisputed evidence in this case is to the effect that all the crops produced on the premises in question, were produced by tenants, who were operating under leases or contracts, by the terms of which the tenants were to receive one-half of all crops produced. Hence, the plaintiff was not entitled to receive any part of the crops; for one-half went to the tenant, who produced it, and the other half to the plaintiff's vendor. It is elementary that in an action for conversion the plaintiff must recover on the strength of his own title, and not on the weakness of that of his adversary. 38 Cyc. p. 2048. Plaintiff's title in this case rests upon the contract between him and the Lund Land Company. But under the terms of that contract, plaintiff had no title to the share of the 1916 crop, which he claims the defendant converted. That share belonged to the Lund Land Company. The fact that Goulet cancelled the contract under which the Lund Land Company held possession when it sold to the plaintiff, obviously did not confer upon plaintiff any greater rights than he had under the contract whereby he became an assignee of the Lund Land Company. Such cancellation, on the other hand, resulted in a termination of whatever rights the Lund Land Company had acquired, except such as it had transferred to the plaintiff. Hence, we think it clear that plaintiff has no cause of action against the defendant for the grain he received; but, in event plaintiff desires to perform the contract between the Lund Land Company and the defendant, he will, of course, be entitled to credit for the payment defendant received in the form of grain, in the fall of 1916.

But there was no provision in the contract to the effect that any of the hay cut on the premises should be turned over to the Lund Land Company. Nor was there any provision reserving title thereto in the Lund Land Company. As the Lund Land Company was entitled to possession of the premises, and the plaintiff stands in its shoes (5 Pom. Eq. Jur. § 2273; Williams v. Corey, supra), and as plaintiff's rights were not cancelled he was, we think, under the evidence in this case the owner of the hay which he had caused to be put up, and hence, entitled to recover damages for the conversion thereof.

It follows, therefore, that the judgment appealed from must be re-

versed, and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

BIRDZELL, NUESSLE, JOHNSON, and BURKE, JJ., concur.